# Supreme Court of Texas

═══════════

No. 22-0678

═══════════

Rachel Lauren Goldstein,

*Petitioner*,

v.

James Sabatino,

*Respondent*

═══════════════════

On Petition for Review from the
Court of Appeals for the First District of Texas

═══════════════════

**Argued February 20, 2024**

JUSTICE LEHRMANN delivered the opinion of the Court.

The primary question presented is whether "territorial jurisdiction"—a criminal concept—is a jurisdictional requirement underlying a district court's power to issue a civil protective order under Chapter 7B of the Texas Code of Criminal Procedure. The district court issued a protective order under Chapter 7B's predecessor[1] against a

_____

[1] When this suit was filed, the protective-order provisions were housed in Chapter 7A of the Code of Criminal Procedure. Because Chapter 7B is the

Massachusetts resident, based on conduct that occurred entirely within Massachusetts borders. On appeal, the respondent challenged the district court's personal jurisdiction over him and its subject matter jurisdiction over the proceeding. The court of appeals vacated the order and dismissed the case, holding that the district court lacked territorial jurisdiction—a purportedly nonwaivable, third jurisdictional requirement. The court of appeals did not address personal jurisdiction.

Though we disagree with the court of appeals' territorial-jurisdiction analysis, we agree with the respondent that the district court lacked personal jurisdiction over him. Accordingly, we affirm the court of appeals' judgment vacating the protective order and dismissing the case.

## I. Background

Rachel Goldstein and James Sabatino dated for about two years in Massachusetts; their relationship ended in 2017. In March 2020, after almost three years with no communication, Sabatino began contacting Goldstein through texts and calls, informing her that he had found sexually explicit photos and conversations shared between her and someone she dated before Sabatino. The photos and conversations were apparently stored on a cell phone that Goldstein had loaned to Sabatino during their relationship. Despite Goldstein's request that Sabatino return the phone, he refused. Goldstein became concerned

current version, the provisions cited in this opinion have not been substantively revised, and any revisions to other provisions do not affect our analysis, we generally reference Chapter 7B to minimize obsolete citations.

that Sabatino would use these texts and images to "control her and ruin her career."

Goldstein served Sabatino with a cease-and-desist letter demanding that he cease communicating with her and return the phone. In May 2020, a Massachusetts court granted Goldstein a protective order against Sabatino. He subsequently violated the order and was arrested. In June, the Massachusetts court extended the protective order for another six months and included a prohibition on any further contact by email, by text, or via a third party.

The same month, Goldstein moved to Harris County, Texas. While the Massachusetts protective order was still in effect,[2] Sabatino began filing small-claims lawsuits in Massachusetts against Goldstein for defamation, lost wages, malicious prosecution, reimbursement for pet care and a vacation they took together, and the cost of the cell phone he was prevented from using. Sabatino also made at least two HIPAA complaints against Goldstein (a doctor), which were later determined to be unfounded.

In October 2020, Goldstein filed an application for a protective order against Sabatino in Harris County.[3] On November 13, Sabatino

---

[2] The record contains no information regarding the status of the Massachusetts protective order after December 1, 2020, when the extension ended.

[3] Attorneys with the Harris County District Attorney's Office filed the application on Goldstein's behalf. *See* TEX. FAM. CODE § 81.007(a) ("The county attorney or the criminal district attorney is the prosecuting attorney responsible for filing applications under [Title 4, Subtitle B of the Family Code, which governs protective orders] . . . ."); TEX. CODE CRIM. PROC. art. 7B.008

3

was served with citation and notice of a December 3 hearing, which took place via Zoom. Sabatino did not file a special appearance and participated in the Zoom hearing pro se. At the hearing, Goldstein testified and offered copies of the text-message exchanges with Sabatino and the lawsuits he had filed against her. After her testimony, the district court allowed Sabatino to "directly examine" himself. Sabatino testified that there was no evidence he had harmed or would harm Goldstein, that the "text message issue has already been litigated in Massachusetts," that the civil suits against Goldstein were all filed in Massachusetts, and that the Texas long-arm statute "does not apply in this case."

The district court found that it had jurisdiction over the parties and the subject matter. It also found that there was reason to believe Goldstein was the victim of stalking pursuant to the Texas Penal Code and then-Chapter 7A of the Code of Criminal Procedure. Based on these findings, the district court granted a lifetime protective order preventing Sabatino from, among other things, communicating with Goldstein except through an attorney or going near Goldstein's residence or place of work.[4]

---

("To the extent applicable, except as otherwise provided by this subchapter, Title 4, Family Code, applies to a protective order issued under this subchapter.").

[4] Specifically, the order prohibits Sabatino from:

(a) Committing dating violence against [Goldstein];

On appeal, Sabatino challenged the district court's personal jurisdiction over him and subject matter jurisdiction over the protective-order proceeding. Goldstein responded that Sabatino waived personal jurisdiction when he failed to file a special appearance and that, because Goldstein lived in Harris County, the district court had subject matter jurisdiction to hear her application and issue a protective order.

The court of appeals agreed that the district court had subject matter jurisdiction because Goldstein applied for the protective order in the district court of the county where she resides. 649 S.W.3d 841, 847 (Tex. App.—Houston [1st Dist.] 2022) (citing former TEX. CODE CRIM.

---

(b) Communicating with [Goldstein] in any manner except through []her attorney of record or a person appointed by the Court;

(c) Communicating a threat through any person to [Goldstein];

(d) Going to or [within 200 feet of] the residence or place of employment or business of [Goldstein] . . . or any future residential and employment addresses of [Goldstein] provided that a [compliant] "Notification of Change of Address" is filed . . . ;

(e) Possessing a firearm, unless the person is a peace officer, as defined by Section 1.07, Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision;

(f) Engaging in conduct directed specifically toward [Goldstein], including following [her], that is likely to harass, annoy, alarm, abuse, torment, or embarrass [her];

(g) Harming, threatening, or interfering with the care, custody, or control of a pet, companion animal, or assistance animal . . . that is possessed by [Goldstein] or by a member of [her] family or household[.]

5

PROC. art. 7A.01(b)(1) (current version at *id.* art. 7B.001(b)(1))).[5]  The court did not address Sabatino's challenge to the district court's personal jurisdiction over him.  However, the court of appeals concluded that, "[p]roperly understood," Sabatino's challenge was to "the trial court's territorial jurisdiction, which is a distinct jurisdictional requirement in all suits" that "cannot be waived."  *Id.* at 847–48.  As none of the conduct that gave rise to the protective order took place in Texas, the court of appeals dismissed the case for lack of territorial jurisdiction.  *Id.* at 849–50.

We granted Goldstein's petition for review.

---

[5] Article 7B.001(b) provides:

An application for a protective order under this subchapter may be filed in:

(1) a district court, juvenile court having the jurisdiction of a district court, statutory county court, or constitutional county court in:

(A) the county in which the applicant resides;

(B) the county in which the alleged offender resides; or

(C) any county in which an element of the alleged offense occurred; or

(2) any court with jurisdiction over a protective order under Title 4, Family Code, involving the same parties named in the application.

TEX. CODE CRIM. PROC. art. 7B.001(b).  We need not and do not address whether this provision imposes jurisdictional limitations on a court's authority to preside over a protective-order proceeding.

6

## II. Territorial Jurisdiction

A court has power to decide a case "only if it has 'both subject matter jurisdiction over the controversy and personal jurisdiction over the parties.'" *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016) (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010)). In criminal cases, an additional jurisdictional concept known as "territorial jurisdiction" comes into play when a criminal offense occurs partly or wholly outside the boundaries of the State. *Ex parte Watson*, 601 S.W.2d 350, 352 & n.2 (Tex. Crim. App. 1980) (citing TEX. PENAL CODE § 1.04). Under the Penal Code, territorial jurisdiction over an offense exists if (1) either the conduct or a result that is an element of the offense occurs inside this state; (2) the conduct outside this state constitutes an attempt to commit an offense inside this state; (3) the conduct outside this state constitutes a conspiracy to commit an offense inside this state, and an act in furtherance of the conspiracy occurs inside this state; or (4) the conduct inside this state constitutes an attempt, solicitation, or conspiracy to commit, or establishes criminal responsibility for the commission of, an offense in another jurisdiction that is also an offense under the laws of this state. TEX. PENAL CODE § 1.04(a). Absent such a connection, the State may not criminally prosecute an offender. *See Allen v. State*, 620 S.W.3d 915, 921 (Tex. Crim. App. 2021) ("To be clear, Appellant cannot be held liable in Texas for the acts committed in Iowa." (citing TEX. PENAL CODE § 1.04)).

The court of appeals imported this distinctly criminal jurisdictional component into Chapter 7B protective-order proceedings.

649 S.W.3d at 848–50. Because such proceedings are undisputedly civil matters, this was error.

Chapter 7B authorizes issuance of a protective order when "the court finds that there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking." TEX. CODE CRIM. PROC. art. 7B.003(b).[6] Among other things, the court may prohibit the alleged offender from communicating with the applicant or the applicant's family or household "in a threatening or harassing manner" and from "engaging in conduct directed specifically toward the applicant or any member of the applicant's family or household . . . that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the person." *Id.* art. 7B.005(a)(2)(A)(i), (C).

Chapter 7B thus authorizes a protective order when the court finds reasonable grounds to believe that the respondent engaged in conduct that would qualify as an offense under certain provisions of the Penal Code. But that is not akin to prosecuting the respondent for the underlying offense. Rather than *punish* someone for past conduct, a protective order *protects* the applicant and prevents future harm. *See, e.g.*, *id.* art. 7B.005(a)(1) (when issuing a Chapter 7B protective order, a court may, among other things, "order the alleged offender to take action . . . that the court determines is necessary or appropriate to prevent or reduce the likelihood of future harm to the applicant or a member of the applicant's family or household"). As the court of appeals

---

[6] The Family Code authorizes issuance of a protective order upon a finding that family violence has occurred. TEX. FAM. CODE § 85.001(b).

8

itself recognized, Chapter 7B proceedings are civil matters.[7] 649 S.W.3d at 847. Thus, they do not implicate the "territorial jurisdiction" required in criminal proceedings. Stated another way, as in any civil case, a court presiding over a Chapter 7B proceeding must have "subject matter jurisdiction over the controversy and personal jurisdiction over the parties." *TV Azteca*, 490 S.W.3d at 36. The court of appeals erred in imposing a third, nonwaivable territorial limitation on the court's jurisdiction that applies only in criminal cases.

Sabatino nevertheless insists that "territorial jurisdiction" is a longstanding, distinct jurisdictional requirement in civil cases. We disagree. Before the U.S. Supreme Court's landmark decision in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), our case law

---

[7] In *In re Commitment of Fisher*, we recognized that a civil statute can be "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" 164 S.W.3d 637, 647 (Tex. 2005) (alteration in original) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). In conducting that evaluation, we apply the U.S. Supreme Court's "*Kennedy* factors," which include:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)). We need not engage in an exhaustive analysis of these factors to conclude that Chapter 7B is not so punitive in purpose or effect as to controvert its "civil" status—indeed, neither the parties nor the court of appeals suggests otherwise.

9

consistently treated the concept of territorial jurisdiction as a subsidiary consideration relevant to personal jurisdiction. That is, the cases discussing territorial jurisdiction did so for the purpose of establishing jurisdiction over a *defendant* such that he could be justly bound by a court's judgment. *See Armstrong v. Galveston, H. & S.A. Ry. Co.*, 46 S.W. 33, 35 (Tex. 1898) ("[C]orporations and persons, doing business within the territorial jurisdiction of a state, are subject to its law."); *Traylor v. Lide*, 7 S.W. 58, 61 (Tex. 1887) (describing territorial jurisdiction as limiting a court's exercise of power when it lacks in personam jurisdiction over a party); *see also Mitchim v. Mitchim*, 518 S.W.2d 362, 366 (Tex. 1975) ("Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him.").

This understanding of territorial jurisdiction was grounded in the U.S. Supreme Court's 1887 holding in *Pennoyer v. Neff* that a court could not constitutionally bind a defendant to a judgment unless the court acquired jurisdiction "by service of process within the State, or his voluntary appearance." 95 U.S. 714, 733 (1887). In *Ferrer v. Almanza*, 667 S.W.3d 735 (Tex. 2023), we traced the development of the law governing personal jurisdiction and service of process, culminating with the Supreme Court's complete "retreat" from *Pennoyer* in *International Shoe*, in which the Supreme Court recognized that due process no longer required "a defendant's 'presence within the territorial jurisdiction of a court' to render a judgment against that defendant." *Id.* at 739 (quoting

10

*Int'l Shoe*, 326 U.S. at 316). We affirmed in *Ferrer* that, in the context of a statute tolling limitations during a defendant's "absence from this state," such "absence . . . depends not on physical location but, rather, on whether a defendant is subject to personal jurisdiction and service." *Id.* at 744. Our analysis in *Ferrer* reflects the understanding that territorial jurisdiction was subsumed into the minimum-contacts analysis.

The U.S. Supreme Court has understood *International Shoe* the same way. Specifically, the Court held that "Due Process does not necessarily require the States to adhere to the unbending territorial limits on jurisdiction set forth in *Pennoyer*." *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 618 (1990). Territorial jurisdiction has not been recognized as a separate jurisdictional consideration in the civil courts. Rather, *Pennoyer* established a regime in which territorial jurisdiction was the only way for a court to achieve personal jurisdiction over a party. However, after *International Shoe*, a party's presence within the territorial jurisdiction of a state was no longer required to satisfy the due process requirements of personal jurisdiction. After this shift, the term "territorial jurisdiction" quickly fell into desuetude.

In his supplemental briefing in this Court, Sabatino relies on the well-settled presumption against a statute's having extraterritorial effect to argue that "territorial jurisdiction" is a longstanding prerequisite in civil cases. *See, e.g.*, *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 443–44 (Tex. 2007). This presumption is that a statute has no extraterritorial effect "[u]nless the intention to have [the] statute operate beyond the limits of the state . . . is clearly expressed or

11

indicated by its language, purpose, subject matter, or history." *Id.* at 443 (quoting *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187 (Tex. 1968)).[8]   However, the presumption is not jurisdictional in an adjudicative sense; it does not concern a court's power to render a binding judgment.   Thus, as Sabatino disclaimed any challenge to Chapter 7B's reach or the validity of the order's provisions in the court of appeals, the issue is not before us.  In any event, because, as discussed below, we ultimately hold that the trial court lacked personal jurisdiction over Sabatino, we need not address his argument in this Court about the presumption against legislative extraterritoriality.[9]

## III. Personal Jurisdiction

The court of appeals did not reach Sabatino's personal jurisdiction issue, but in the interest of judicial economy we will address it in the first instance here.  *See Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022).

---

[8] Even if the Legislature has overcome this presumption by clearly expressing that a statute applies to extraterritorial conduct, there are also constitutional limitations on the statute's extraterritorial reach. *Daccach*, 217 S.W.3d at 446.

[9] We also do not answer a related question—whether a person is the victim of an offense under the Texas Penal Code, for purposes of the protective-order statutes, if all the relevant conduct took place between non-Texas residents in another jurisdiction.  Answering that question could involve considerations similar to the territorial jurisdiction analysis employed by the court of appeals, but the answer would dictate whether a protective order is available on the merits, not whether the court has jurisdiction over the proceedings.  Only jurisdictional questions are before us in this appeal; we therefore hold only that a lack of territorial jurisdiction in the criminal sense is not a jurisdictional bar to a Texas court's consideration of a civil protective-order application.

Texas courts may exercise personal jurisdiction over a nonresident defendant when (1) our long-arm statute authorizes it and (2) doing so comports with federal and state constitutional due process guarantees. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). But because Texas's long-arm statute extends personal jurisdiction as far as the federal constitutional requirements allow, the "federal due process requirements shape the contours of Texas courts' jurisdictional reach." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016).

The assertion of personal jurisdiction over a nonresident defendant is constitutional when two criteria are met: (1) the defendant has established "minimum contacts" with the forum state; and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *TV Azteca,* 490 S.W.3d at 36 (quoting *Int'l Shoe*, 326 U.S. at 316). To establish minimum contacts, the defendant must have "purposefully [availed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).

The purposeful-availment analysis is guided by three main principles, which bear repeating. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). First, only the defendant's contacts with the forum are relevant; the unilateral activity of a third party is not. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Second, the defendant's contacts must be "purposeful" as opposed to "random, fortuitous, or attenuated." *Id.* And

13

third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Michiana*, 168 S.W.3d at 785.

Here, the analysis is simple. Goldstein does not point to any purposeful contacts that Sabatino made with Texas—in fact, she points to no contacts at all. The predicate conduct underlying the protective order took place entirely in the Commonwealth of Massachusetts, and most of it took place while both Goldstein and Sabatino were Massachusetts residents.[10]

Goldstein does not dispute the absence of contacts between Sabatino and Texas. Rather, Goldstein argues that Sabatino waived any challenge to the district court's personal jurisdiction by entering a general appearance. Texas Rule of Civil Procedure 120a, which governs special appearances for the purpose of challenging personal jurisdiction, provides that "[e]very appearance, prior to judgment, not in compliance with this rule is a general appearance." TEX. R. CIV. P. 120a(1). "A party enters a general appearance," and thus waives a challenge to personal jurisdiction, "when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004). Goldstein argues that Sabatino failed to file a special appearance in

---

[10] Sabatino filed small-claims lawsuits against Goldstein after she moved to Harris County, but they were filed in Massachusetts, and notice of those suits was directed to Goldstein's Massachusetts address. We thus need not address how serving Goldstein with those suits in Texas would have impacted the analysis.

14

accordance with Rule 120a and entered a general appearance by appearing at the December 2020 hearing via Zoom.

In evaluating this procedural waiver question, we are mindful of Sabatino's status in the district court as a pro se litigant. We have said that "[t]here cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves." *Mansfield State Bank v. Cohn,* 573 S.W.2d 181, 184–85 (Tex. 1978). Still, courts should "review and evaluate pro se pleadings with liberality and patience." *Li v. Pemberton Park Cmty. Ass'n,* 631 S.W.3d 701, 706 (Tex. 2021). This is especially true when the application of a procedural rule "turns on an actor's state of mind . . . [which] does not create a separate rule, but recognizes the differences the rule itself contains." *Wheeler v. Green,* 157 S.W.3d 439, 444 (Tex. 2005). Accordingly, the specific facts and circumstances of this case are crucial for our analysis.

When Sabatino was served with the application for a protective order, the district court sent a notice to the parties setting the date for the December hearing and requiring them to file sworn motions on their appearances before the hearing. *See* TEX. R. CIV. P. 120a(1) ("[A] special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion."). Sabatino failed to do so. However, he also filed no other pleadings or motions asking for relief or otherwise indicating that the action was properly pending. Further, "we have never held and decline to hold today, that merely appearing as a witness in a cause serves as a general appearance, subjecting one to the jurisdiction of the court." *Werner v. Colwell,* 909 S.W.2d 866, 870 (Tex. 1995).

15

Moreover, Sabatino raised the issue of personal jurisdiction as soon as he was permitted to speak substantively on his own behalf. After being sworn in as a witness himself, Sabatino began his testimony as follows:

> SABATINO: Okay. So I just want to say for the record that the plaintiff has testified that no physical harm or threats of physical harm took place, either within our relationship or after our relationship. She testified that to that effect --

> THE COURT: I've heard her testimony, sir.

> SABATINO: Okay. The second one is that the text message issue has already been litigated in the state of Massachusetts. Texas -- the long arm statute from Texas does not apply in this case.

This exchange demonstrates that, at the very least, Sabatino challenged personal jurisdiction at his first opportunity to offer any sworn testimony. *See* TEX. R. CIV. P. 120a(1) ("[A] special appearance may be made by any party either *in person* or by attorney for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant . . . ." (emphasis added)). Thus, interpreting Sabatino's actions liberally and with patience, we do not view his appearance at the Zoom hearing as constituting a general appearance or a waiver of his sworn challenge to the district court's personal jurisdiction.

### IV. Conclusion

The court of appeals erred in holding that territorial jurisdiction is an independent jurisdictional requirement in Chapter 7B protective-order proceedings. However, we hold that the district court lacked personal jurisdiction over Sabatino, who did not enter a general

16

appearance. Accordingly, we affirm the court of appeals' judgment vacating the protective order and dismissing the case.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** May 24, 2024